By the Court.
Pierrepoxt, J.
All that is necessary to be considered, is the question of usury.
According to the statute of 1837, “ No person or corporation shall, directly or indirectly, take or receive in money, goods or things in action or in any other way, any greater sum or greater value for the loan or forbearance of any money, goods or things in action, than seven dollars for the use of $100 for one year, and after that rate for a greater or less sum, or for a longer or shorter time.”
The party who violates this provision of the act, is liable, not only to lose his entire debt, but is guilty of a misdemeanor, and may be punished by a fine of one thousand dollars, or by imprisonment for six months, or both.
The fair import of the contract between the plaintiff and the defendants is, that the defendants and De Gray should have the use of the proceeds of the plaintiff’s California draft, from the time of its discount until the 15th of July following, when the draft would mature—that the discount upon the draft which at the legal rate amounted to $227, should be deducted from the face of the draft, in order to ascertain the nett proceeds; and that the plaintiff should receive on the 15th of July the face of his draft, maturing on that day; so that the plaintiff was not by the terms of the contract to receive any rate of interest, or any gain or advantage by the transaction; and it was understood that the discount of $227 was to be borne by the defendants and De Gray severally, in proportion to the amount, of the proceeds of the said draft, which each of them used.
Such a contract is not per se usurious. It is usurious if done with intent to evade the statute, and to enable the plaintiff to receive more than lawful interest for the use of his money. Nor would the mere fact, that the plaintiff had at times drawn his bank account below the amount of the balance of the proceeds of this draft, thus left with him, necessarily make the transaction usurious. The usury in such a case depends upon the intent of the parties; it is not created by an error in computation, nor *6 induced by an accident or a mistake, into which no corrupt intention has entered. Nor can a borrower by an act of- generosity, real or contrived, render that corrupt and usurious, which was not so by its terms, and which was not so designed by the lender.
The object of the statute is, to prevent the lender from receiving more than the legal rate of interest for the loan of his money. But it would be a monstrous doctrine to hold, that a borrower who induces a friend’to pay $200 for the legal discount of a draft in order to accommodate him, with the use of its proceeds until its maturity, can take advantage of the statute of usury to defeat a recovery, because the borrower did not immediately withdraw the proceeds of the draft, and therefore, had not, according to strict computation, been in actual possession of the money the entire time for which his note bears interest, or because not wanting to use but half the money borrowed, he had suffered the rest to remain in the lender’s bank, or because the borrower from a feeling of generosity or justice afterwards wished the lender to derive some uncertain advantage from the balance thus remaining. To make the transaction usurious, there must have been an intent on the part of the lender to receive, and on the part of the borrower to pay, more than legal interest. In any given case, all the circumstances are to be considered, in order to arrive at the corrupt intent, and any and every contrivance and subterfuge will be unavailing if the corrupt intention appears.
In this case, we. find no sufficient evidence that the plaintiff intended to receive any rate of interest, or to do anything more than accommodate his trusted friends, who agreed to place him on the 15th of July just in the same condition as though he had not caused the draft to be discounted, but had retained it in his own hands until its maturity on that day.
New trial ordered with costs to abide the court.